UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

TREVOR HEISTAND,

    Plaintiff,

v.

                                   Hon. Janet T. Neff

COMMISSIONER OF SOCIAL SECURITY,

                                   Case No. 1:20-cv-103

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that it is not supported by substantial evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on December 14, 2015, and an application for SSI on January 8, 2016, alleging that he had been disabled since September 14, 2015. (PageID.109–10, 214.) Plaintiff alleged disability due to back injury, depression, mental disorder, arthritis, attention

deficit hyperactivity disorder (ADHD), anxiety, and a herniated disc. (PageID.83–84.) He was 44 years old at his alleged onset date. (PageID.83.) Plaintiff graduated from high school and had some specialized job training. (PageID.219.) Plaintiff had previous employment as a quality assurance technician. (PageID.49.) Plaintiff's application was denied (PageID.109–10), after which he requested a hearing before an Administrative Law Judge (ALJ).

On April 25, 2018, ALJ Sarah R. Smisek held a hearing and received testimony from Plaintiff and Bruce Growick, an impartial vocational expert. (PageID.56–81.) On August 3, 2018, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because he was not disabled from his alleged onset date through the date of the decision. (PageID.39–51.) The Appeals Council denied Plaintiff's request for review on December 16, 2019. (PageID.28–31.) Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on February 5, 2020.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, the ALJ found that Plaintiff suffered from severe impairments of degenerative disc disease, depression, and anxiety. (PageID.41.) The ALJ found that Plaintiff's obstructive sleep apnea, ADHD, thyroid condition, knee pain, headaches, restless leg syndrome, and seizure symptoms were nonsevere. The ALJ also considered obesity in accordance with SSR 02-01p, but found no limitations based on this condition. (PageID.42.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled

---

must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.43–44.) In particular, the ALJ considered Listings 1.04 (disorders of the spine), 12.04 (depression and bipolar disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (PageID.42–43.)

The ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except:

> [A]ny work must allow for the exercise of a sit/stand option. That option is defined as work that can be done in both the sitting and standing positions, such that the change in position will not cause the worker to go off task. After sitting for 30 minutes, the claimant should have the option to change positions for up to 10 minutes. The claimant can never climb ladders, ropes, or scaffolds. The claimant can never kneel, crouch, or crawl. The claimant can perform simple, unskilled work in a low-stress environment, defined as having only occasional changes in work setting and requiring no more than occasional decision-making.

(PageID.44.)

At step 4, the ALJ found that Plaintiff could not perform his past relevant work, which consisted of light, semi-skilled work. (PageID.49.) At step five, based on testimony from the vocational expert, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the occupations of bench assembler and work order clerk, 400,000 of which existed in the national economy. (PageID.50.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## **DISCUSSION**

Plaintiff raises the following issues in his appeal: (1) the ALJ erred in assessing Plaintiff's subjective symptoms; and (2) the ALJ gave inadequate reasons to reject the opinion of Plaintiff's treating physician Duane Oetman, M.D.

**I.      The ALJ Properly Assessed Plaintiff's Subjective Symptoms**

An ALJ evaluates a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability in accordance with SSR 16-3p. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same." *Karmol v. Comm'r of Soc. Sec.*, No. 1:17-cv-977, 2019 WL 1349485, at *3 (W.D. Mich. Mar. 26, 2019). As explained in *Palmer v. Commissioner of Social Security*, No. 1:17-cv-577, 2018 WL 4346819 (W.D. Mich. Aug. 9, 2018), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 11, 2018):

> The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007)). Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017). *Id.* at *6.

Consistent with prior ruling SSR 96-7p, *see Rogers*, 486 F.3d at 248, SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). An ALJ's findings in this area must be "accorded great weight and deference." *Id.* The

Sixth Circuit has said that such findings "may not be disturbed absent compelling reason," and in general, "are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted).

The ALJ considered several factors in evaluating Plaintiff's subjective symptoms, including the limited objective evidence and generally normal to mild examination findings. (PageID.48.) The ALJ acknowledged that Plaintiff had severe impairments that could reasonably be expected to cause his alleged symptoms, but the limited objective medical evidence did not support his allegation of disabling symptoms. (PageID.46, 48.) For example, Plaintiff saw his primary care physician, Duane A. Oetman, M.D., on December 17, 2015, three months after his alleged onset date, to follow up on his ADHD. Plaintiff reported that his lower back pain was getting worse. (PageID.298.) Examination findings showed that Plaintiff had a normal range of motion, normal strength, no sensory deficits, and no tenderness. (PageID.301.) On July 21, 2016, Dr. Oetman saw Plaintiff for back pain. Although Plaintiff had decreased range of motion and tenderness in his lumbar spine, Dr. Oetman reported normal strength and no sensory deficits. (PageID.378.) Dr. Oetman reported similar findings in December 2016, June 15, 2017, and January 9, 2018. (PageID.344, 365, 372.) During a consultative psychological examination in July 2016, Allison Bush, M.S., noted that instead of using the handicap ramp, Plaintiff had walked up two flights of stairs and another flight to get into the building. (PageID.328.) Finally, during a physical consultative examination on July 30, 2016, by Wissam El Fallal, D.O., Plaintiff had 5/5 muscle strength throughout, intact sensation, and no atrophy. Plaintiff was able to squat 20 percent and tandem and heel and toe walk without difficulty, and straight-leg raising was negative in both the seated and supine positions. (PageID.335.) The ALJ properly concluded that Plaintiff's alleged limitations were not supported by the medical record. *See Curler v. Comm'r of Soc. Sec.*, 561 F.

7

App'x 464, 474 (6th Cir. 2014) ("Had Curler suffered from severe pain associated with her back condition, the medical records would have revealed severe back or leg abnormalities, abnormal functioning on physical exams, recommendations for more aggressive treatment, and more significant doctor-recommended functional limitations.").

The ALJ also noted that, during the relevant period, Plaintiff "rarely sought or received treatment, and the treatment received was relatively conservative." (PageID.48.) In fact, during the three-year period between his alleged onset date and the date of the hearing, Plaintiff had only six appointments to treat his back pain, five of which were with Dr. Oetman. Moreover, Plaintiff's pain was conservatively managed with medication which, the ALJ noted, had "been relatively effective in controlling [Plaintiff's] symptoms." (PageID.48.) Such conservative treatment of alleged disabling impairments is also a valid basis to discount a claimant's pain complaints. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638 (6th Cir. 2016) (noting that the plaintiff's "routine and/or conservative treatment for the allegedly disabling impairments" was a proper basis to discount his allegations of pain).

Finally, the ALJ found the extent of Plaintiff's alleged limitations at odds with his reported activities, which included driving his children to the bus and school, performing household chores, going out alone, shopping in stores, and performing his personal care. (PageID.48, 230–32.) In addition, Plaintiff reported that he watched movies and spent time outside watching wildlife and that his friends took him to the movies and to the hockey game. (PageID.329.) The ALJ's consideration of such evidence was proper. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 232 (6th Cir. 1990).

In short, substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptoms. Accordingly, this argument lacks merit.

## II.   The ALJ Gave Good Reasons For Discounting Dr. Oetman's Opinion

Plaintiff's primary care physician, Dr. Oetman, gave a sworn statement regarding Plaintiff's impairments, limitations, and functioning. (PageID.390–99.) He said Plaintiff's primary diagnosis was lumbar osteoarthritis and that the "pain that he has could definitely affect his ability to concentrate." (PageID.392, 394.) Dr. Oetman opined that Plaintiff would need unscheduled work breaks that would take him off task 15 percent or more of the day; that plaintiff would be restricted in his ability to do twisting, stooping, crouching, and climbing ladders; and that he would be unable to lift more than ten pounds for any repetitive amount of time. (PageID.395.) Dr. Oetman also said that he "could easily see [Plaintiff] missing two, three days a week." (PageID.396.)

The ALJ declined to give Dr. Oetman's opinion controlling weight:

> The undersigned gives Dr. Oetman's assessment little weight because it is not consistent with the overall record, discussed above, indicating relatively normal to mild findings on examination, particularly regarding the claimant's psychiatric conditions. In addition, the undersigned notes that Dr. Oetman is a family practice doctor and not a mental health provider or specialist, and the assessment regarding off task and breaks was speculative.

(PageID.46, 48.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation

9

omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required explicitly to discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

Although Dr. Oetman had a long-term treating relationship with Plaintiff, the ALJ properly discounted his opinion as inconsistent with the overall record, particularly Dr. Oetman's own treatment notes, which, as noted above, consistently showed normal to mild findings that were inconsistent with Plaintiff's claimed limitations. In addition to mostly normal findings, Dr. Oetman's treatment notes reflect that, when Plaintiff described his pain, he rated it only as 2/10 to 4/10. "An inconsistency with treatment notes and other evidence in the medical record are among the reasons that can independently justify an ALJ's decision to give less-than-controlling weight to a treating physician's opinion." *Moses v. Comm'r of Soc. Sec.*, No. 1:19-cv-1960, 2020 WL 3453129, at *10 (N.D. Ohio May 29, 2020), report and recommendation adopted, 2020 WL 3447831 (N.D. Ohio June 24, 2020); *see also Goldman v. Comm'r of Soc. Sec.*, No. 1:080cv-664, 2009 WL 3242569, at *9–10 (W.D. Mich. Sept. 30, 2009) (finding the ALJ's decision to give less than controlling weight to the treating source's opinions proper because they were "inconsistent with the objective medical evidence as well as [the doctor's] own treatment notes"). As the ALJ noted, Dr. Oetman's opinion regarding Plaintiff's ability to concentrate lacked support and was at odds with his own treatment records, which routinely noted that Plaintiff was oriented with normal cognition and memory. (301, 344, 365, 372, 378.) In fact, Dr. Oetman's notes show that he never observed that Plaintiff was unable to concentrate. Finally, the ALJ did not reject the opinion altogether. Instead, to the extent it was consistent with the medical record, the ALJ incorporated limitations that were consistent with the opinion.

Accordingly, the ALJ properly weighed Dr. Oetman's opinion and gave good reasons for giving it less than controlling weight.

## CONCLUSION

For the reasons stated herein, I recommend that the Commissioner's decision be **affirmed.**

Dated: February 25, 2021            /s/ Sally J. Berens
                                       SALLY J. BERENS
                                       U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).